United States District Court
Southern District of Texas
**ENTERED**
July 22, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LEANTHA ROSE CHAVEZ, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-21-867 |
| | § | |
| LUIS ALVARADO, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

When law enforcement officers are required to interact with individuals suffering from acute episodes of mental illness, the encounters too often end badly. This case is no exception. Nicolas Chavez was under treatment for mental illness and experiencing acute symptoms when he was shot and killed by Houston police officers. Chavez's family has sued some of the officers involved, the Houston Police Department, and the City of Houston. The City has moved to dismiss under Rule 12(b)(6), the plaintiffs have responded, and the City has replied. (Docket Entry Nos. 14, 15, 16). The court heard argument on the motion.

Based on the motion, the response, the pleadings, the arguments of counsel, and the applicable law, the court grants the motion to dismiss. The claims against the Houston Police Department and the police officers in their official capacities are dismissed, with prejudice. The claims on behalf of Chavez's estate are dismissed, without prejudice and with leave to amend within 14 days of the probate court's ruling on the appointment of an estate representative or administrator. The § 1983 claims against the City based on excessive force, deprivation of life and liberty without due process, and failure to train, are dismissed, without prejudice and with leave to amend by **August 13, 2021**. The plaintiffs may also amend their complaint to assert

§ 1983 claims against the police officers in their individual capacities by **August 13, 2021**.  All other claims are dismissed, with prejudice, because further amendment would be futile.

The reasons for these rulings are explained below.

## I.    Background[1]

Around 9:00 p.m. on April 21, 2020, three people called 911 seeking help for a man walking near a freeway exit, "throwing himself in front of cars," and apparently experiencing a "mental breakdown."  (*Id.* at ¶¶ 26–32).  Other 911 callers reported that the man was "yelling and screaming and jumping over fences," was "bleeding," and was holding "a metal tube of some sort." (Docket Entry No. 12-1 at 2:17, 3:04; Docket Entry No. 12 at ¶ 38).[2]

Chavez was a patient of the Harris Center for Mental Health and IDD (Intellectual and Developmental Disabilities).  (Docket Entry No. 12 at ¶ 21).  He struggled with mental illness and urges to self-harm.  (*Id.* at ¶ 22).

Sergeant Benjamin LeBlanc and officers Luis Alvarado, Kevin Nguyen, Patrick Rubio, and Omar Tapia responded to the 911 calls.  When they arrived, Chavez was crouching behind a telephone pole, between a parking-lot wheel block and a wooden fence.  (Docket Entry No. 12 at ¶ 44; Docket Entry No. 12-1 at 4:13).  Chavez rocked back and forth, then fell to the ground

---

[1]  The facts here are drawn from the complaint and its attached exhibits, including the video footage that the Houston Police Department publicly released.  (Docket Entry Nos. 12, 12-1, 12-2, 12-3, 12-4, 12-5, 12-6, 12-7).  The well-pleaded facts alleged in the complaint do not conflict with the video footage and are taken as true for this reason.  *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *Taylor v. Hartley*, 488 F. Supp. 3d 517, 526–27 (S.D. Tex. 2020) ("Federal courts in Texas have accepted and considered videotape footage on motions to dismiss excessive-force claims under Section 1983."); *Robles v. Ciarletta*, 797 F. App'x 821, 832 (5th Cir. 2019) (per curiam) (the district court did not err by considering video footage at the motion-to-dismiss stage because the complaint referred to the video and the plaintiffs' claims relied on it).
[2]  Docket Entry No. 12-1 contains the link to a Houston Police Department video containing excerpts of 911 calls and the officers' bodycam footage.  Citations to Docket Entry No. 12-1 are to timestamps of that video.

screaming.  The plaintiffs allege that Chavez had stabbed himself with a piece of rebar he was holding.  (Docket Entry No. 12 at ¶¶ 44–48).

LeBlanc, the commanding officer, drew his taser and instructed the other officers to do the same.  (*Id.* at ¶¶ 52–58; Docket Entry No. 12-1 at 4:19).  Chavez cursed at the officers.  (Docket Entry No. 12 at ¶ 60).  LeBlanc aimed his taser at Chavez and said, "Hey bud.  Hey bud.  We're here to help you, man."  Chavez responded, "No you're not."  (*Id.* at ¶ 64; Docket Entry No. 12-1 at 4:26-29).

Chavez stood up and began pacing the parking lot, and the officers continued speaking with him.  (*Id.* at 4:38; Docket Entry No. 12 at ¶¶ 66–70). Officer Tapia repeatedly told Chavez to "[g]et on the ground," and asked Chavez his name.  (Docket Entry No. 12 at ¶ 71; Docket Entry No. 12-1 at 4:44, 4:51).  Chavez shouted, "I'm a MHMRA patient and I feel like dying."[3]  (Docket Entry No. 12 at ¶ 78; Docket Entry No. 12-1 at 5:08).  Chavez continued pacing while Tapia asked him to sit down.  Chavez told the officers to "shoot"; Tapia responded, "No one's shooting.  Calm down."  (Docket Entry No. 12-1 at 5:15–18).  Chavez began backing away from the officers, flailing his arms.  Alvarado followed with his taser drawn and again told Chavez to "get on the ground."  (*Id.* at 5:36; Docket Entry No. 12 at ¶¶ 84–98).

As Chavez continued backing away slowly, with one hand on his head and the other extended at his side, one officer shot him with a nonlethal "beanbag" shotgun.  (Docket Entry No. 12-1 at 5:46; Docket Entry No. 12 at ¶¶ 108–12).  A "beanbag shotgun" is "a 12-gauge shotgun that fires beanbag rounds at a rate of about 90 m.p.h."  *Meadours v. Ermel*, No. CIV.A. H-04-102, 2005 WL 1923596, at *1 (S.D. Tex. Aug. 10, 2005), *aff'd*, 483 F.3d 417 (5th Cir. 2007).  Although not classified as lethal force, beanbag shotguns "can cause death or serious bodily

---

[3]  "MMHRA" refers to the Mental Health and Mental Retardation Administration, the former name of the Harris Center for Mental Health and IDD.  (Docket Entry No. 12 at ¶ 21).

injury." *Id.*  Officers then ordered Chavez to "[g]et on the ground now." (Docket Entry No. 12-1 at 5:51).  Chavez shouted "yeah," and an officer shot again. (*Id.* at 5:53; Docket Entry No. 12 at ¶ 120).  Chavez shouted, "another one," and LeBlanc told the other officers, "y'all, taser him." (Docket Entry No. 12-1 at 5:54–56; Docket Entry No. 12 at ¶ 124).  Alvarado fired his taser, hitting Chavez. (Docket Entry No. 12 at ¶ 129).

Despite the blows, Chavez continued pacing the parking lot.  He walked toward one of the officers, swinging his arms aggressively. (Docket Entry No. 12-1 at 6:12).  One officer shouted that Chavez had "a knife in his hand." The plaintiffs deny that a knife was present. (*Id.*; Docket Entry No. 133).  The officers told Chavez to "calm down." (Docket Entry No. 12-1 at 6:19).  Chavez stopped walking toward the officers and, walking backwards, began striking himself.  Tapia told Chavez to "[s]top cutting [him]self." (*Id.* at 6:20; Docket Entry No. 12 at ¶¶ 134–35).  Chavez continued pacing and striking himself.  After a short time, he walked toward the officers, telling them to "shoot." (Docket Entry No. 12-1 at 6:40–44; Docket Entry No. 12 at ¶¶ 138–40).

By this time, Deputy Art Garduño of the Harris County Precinct 6 Constable's Office had arrived to assist the officers. (Docket Entry No. 12 at ¶ 145).  Chavez began walking toward Garduño, who fired his taser. (*Id.* at ¶¶ 147–51).  As Garduño fired, LeBlanc shot Chavez twice with his service pistol. (*Id.* at 158; Docket Entry No. 12-1 at 8:35–40).  Other officers, including Nancy Leija, fired their tasers as well. (Docket Entry No. 12 at ¶¶ 165–67; Docket Entry No. 12-1 at 8:55–9:03).  After LeBlanc shot Chavez, Leija put her "fully spent" taser on the ground. (Docket Entry No. 12 at ¶ 168).

The body camera video does not show what happened in the next 30 seconds, although it does provide audio.  The officers repeatedly told Chavez "don't move," "get down," and "get on the ground." (Docket Entry No. 12-1 at 9:04–34).  When the video resumes, Chavez is lying on

the ground, on his back, several feet from the officers.  Officer Leija's spent taser was between

Chavez and Officer Tapia.  Chavez shouted, "fuck you, kill me."  (*Id.* at 9:35–36).  According to

the complaint, Chavez continued holding a "small piece of rebar."  (Docket Entry No. 12 at ¶ 177).

Tapia told Chavez to "drop that knife."  Chavez responded by saying, "no, fuck you," and

"kill me."  Chavez continued to lay on his back, telling the officers to "just put [him] away."

(Docket Entry No. 12-1 at 10:04–08, 10:24; Docket Entry No. 12 at ¶ 186).  The officers asked

Chavez to "please comply with us, please comply."  (Docket Entry No. 12-1 at 10:26).  Chavez

again asked the officers to kill him.  (*Id.* at 10:30; Docket Entry No. 12 at ¶ 188).

After rolling on the ground for a few minutes, Chavez sat up on his knees and looked at

the officers, who ordered him to "not get up."  (Docket Entry No. 12-1 at 10:44).  Chavez shouted

"Shoot me.  What the fuck you scared of?  Can't kill a Mexican-Chinese?"  (*Id.* at 10:46; Docket

Entry No. 12 at ¶ 202).  Minutes later, Officer LeBlanc told Chavez: "[w]e want to get you the

medical help you need man, but you got to allow us to do it."  (Docket Entry No. 12-1 at 11:02).

Chavez rocked back and forth, occasionally hitting himself.  Officer Joseph Adovasio asked

Chavez to "talk" with them, and Chavez responded with another "fuck you."  (*Id.* at 11:36).

Adovasio responded: "[t]hat's fine, you can be mad at me," and Chavez shouted, "Jane I love you,

but I'm not spending the rest of my years in prison."  (*Id.* at 11:37–41).  Adovasio asked "who is

that," and Chavez responded "I ain't no snitch."  (*Id.* at 11:48).  Adovasio again asked who "Jane"

was and said that he "was trying to help [Chavez] out."  (*Id.* at 11:54).  Chavez responded, "Fuck

you, I'm going to die tonight."  (*Id.* at 11:55; Docket Entry No. 12 at ¶ 208).  Adovasio responded,

"that's not what we want."  (Docket Entry No. 12-1 at 11:59).

Officer Adovasio continued asking Chavez to talk to him, and Chavez continued

responding with curses.  (*Id.* at 12:04–06).  Adovasio repeatedly told Chavez that he was there to

help, but that Chavez had to let him help.  (*Id.* at 12:07–40).  After a short time, Chavez jumped up and began running toward some of the officers.  One officer fired a bean-bag round at Chavez, and Officer Nguyen shot Chavez with his duty weapon.  (*Id.* at 12:55–13:13; Docket Entry No. 12 at ¶¶ 211–14).

Chavez fell to the ground and began crawling on his knees toward the officers.  (Docket Entry No. 12-1 at 13:37).  Chavez stopped several feet from the officers and threw the piece of metal rebar that he had been holding toward them.  (*Id.* at 13:44, 14:13; Docket Entry No. 12 at ¶¶ 217–20).  Chavez then pulled on the taser wires that were stuck in him, pulling Officer Leija's spent taser toward him.  (Docket Entry No. 12-1 at 13:47–51, 14:20–24).  Chavez picked up the taser, but he did not aim it at anyone.  (Docket Entry No. 12 at ¶¶ 223–29).  Because Officer Leija had previously used the taser, it could not be deployed again.  (*Id.* at 168).  Immediately after Chavez picked up the taser, Officers Alvarado, LeBlanc, Rubio, and Tapia shot him, a total of 21 times.  (Docket Entry No. 12 at ¶¶ 222–30; Docket Entry No. 12-1 at 13:57–14:01, 14:11–16:30).  Chavez was taken to a local hospital and declared dead.

Of the final 21 shots fired, LeBlanc fired two, Alvarado fired seven, Rubio fired six, and Tapia fired six.  (Docket Entry No. 12 at ¶¶ 232, 235, 240, 246).  All of the shots hit Chavez.  During the Houston Police Department's Internal Affairs Department investigation, the officers told interviewers that they believed they had acted according to their training and HPD policies when they shot Chavez.  (*Id.* at ¶¶ 234, 239, 243–45, 248).  After the investigation, Police Chief Art Acevedo indefinitely suspended those officers.  (*Id.* at ¶¶ 233, 236, 241, 247; Docket Entry Nos. 12-2, 12-3, 12-4, 12-5).

Jessica Chavez, Chavez's wife; Leantha and Joaquin Chavez, Chavez's parents; Leigh Wise, as next friend of A.N.W. and A.M.W., Chavez's children; and Jennifer Thomson, as next

friend of N.C., Chavez's child and as an applicant to be the dependent administratrix of Chavez's estate, sued the Houston Police Department, the City of Houston, and Officers Alvarado, LeBlanc, Nguyen, Tapia, and Rubio.  The complaint asserted constitutional claims under 42 U.S.C. § 1983 and Texas common-law claims under the Texas Tort Claims Act, Tex. Prac. & Rem. Code § 101.001, *et seq*.  (Docket Entry Nos. 1, 12).  The City has moved to dismiss the amended complaint under Rule 12(b)(6). (Docket Entry No. 14).

## II.    The Legal Standard for a Rule 12(b)(6) Motion to Dismiss

When reviewing a motion to dismiss, the court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 502 (5th Cir. 2014).  The court does not accept the plaintiff's legal conclusions as true.  *Id.*  Under Rule 12(b)(6), a federal court dismisses a complaint if it fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). "To survive dismissal, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Thompson*, 764 F.3d at 503 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556); *see also Thompson*, 764 F.3d at 503 (when evaluating plausibility, the court does not "evaluate the plaintiff's likelihood of success" (internal quotation marks omitted)).

When a complaint fails to state a claim, the court should generally give the plaintiff a chance to amend before dismissing the action with prejudice, unless amendment would be futile. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Amendment is futile if an amended complaint would still fail to state a claim. *See Mandujano v. City of Pharr, Texas*, 786 F. App'x 434, 438 (5th Cir. 2019); *Bernegger v. Dep't of Revenue*, 785 F. App'x 209, 211 n.1 (5th Cir. 2019).

## III. Analysis

The City argues that: (a) the plaintiffs' claims are redundant, because (1) the Houston Police Department is not a separate defendant from the City of Houston, and (2) the plaintiffs are suing the individual officers in their official capacities; (b) Jennifer Thomson has not pleaded sufficient facts to show her capacity to assert claims on behalf of Chavez's estate; (c) the Eighth Amendment does not apply; (d) the Texas Tort Claims Act does not waive the City's immunity for state-law claims; and (e) the § 1983 claims against the City are undercut by the complaint's exhibits. (Docket Entry No. 14). The court addresses each argument in turn.

### A. The Redundant Claims

#### 1. The Houston Police Department

The City argues that because the Houston Police Department is not a separate legal entity, the plaintiffs' claims against the Department are really against the City. (Docket Entry No. 14 at 10). The plaintiffs did not respond to the argument, effectively abandoning their claims against the Houston Police Department. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (the plaintiff's "failure to pursue [a] claim beyond [the] complaint constitute[s] abandonment." (citation omitted)); *Brackens v. Ocwen Loan Servicing, LLC*, No. 3:13-CV-3458,

2015 WL 1808541, at *4 (N.D. Tex. Apr. 21, 2015) ("Because Plaintiff failed to address Defendant's arguments in a response, he has abandoned his wrongful foreclosure claim.").

Even if the plaintiffs had responded, their claims against the Houston Police Department would be dismissed.  The Police Department is "a subdivision of the City of Houston and therefore does not have a separate legal identity that would allow it to sue and be sued." *McAfee v. Houston Police Dep't*, No. H-19-112, 2019 WL 12021829, at *1 (S.D. Tex. Mar. 19, 2019); *see, e.g.*, *Menefee v. Houston Police Dep't,* No. 4:14-CV-01705, 2016 WL 3093131, at *5–6 (S.D. Tex. May 11, 2016) (examining the City of Houston's charter and dismissing the claims against the Houston Police Department because it is merely a component of the City, not a separate entity), *report and recommendation adopted*, No. H-14-1705, 2016 WL 3077487 (S.D. Tex. May 31, 2016); *Henry v. City of Houston*, No. H-10-2545, 2012 WL 950061, at *6 (S.D. Tex. Mar. 19, 2012) ("The City of Houston Police Department is a department within the City of Houston and does not qualify as an independent entity with capacity to sue or be sued. Therefore, plaintiff cannot assert a cause of action against the City of Houston Police Department.").  The plaintiffs' claims against the Houston Police Department are redundant, and they are dismissed, with prejudice.

### 2.      The Official Capacity Claims Against the Individual Officers

The City of Houston argues that the plaintiffs' claims against the individual officers in their official capacities are claims against the City of Houston and therefore redundant.  (Docket Entry No. 14 at 11–12).  The plaintiffs do not respond to the argument, but they ask for leave to amend the complaint to assert their claims against the officers in their individual capacities instead. (Docket Entry No. 15 at ¶ 58).  The plaintiffs have effectively abandoned their official-capacity claims.

The official-capacity claims against the officers would be dismissed even if the plaintiffs had not abandoned them.  These claims are "actually against the City of Houston, the municipality employing the [d]efendant [o]fficers," because "official capacity suits are really suits against the governmental entity."  *Max-George v. Houston Police Dep't*, No. H-17-2264, 2020 WL 6322283, at *4 (S.D. Tex. Oct. 28, 2020) (quoting *Goodman v. Harris County*, 571 F.3d 388, 396 (5th Cir. 2009)).  Because the plaintiffs are suing the City of Houston, their official-capacity claims against the individual officers are redundant and are dismissed.  *See id.* (dismissing the plaintiffs' official-capacity claims against individual Houston Police Department officers because the plaintiffs "named the City of Houston as a defendant"); *Holland v. City of Houston*, 41 F. Supp. 2d 678, 689 (S.D. Tex. 1999) (because the plaintiff sued both a City police officer in his official capacity and the City, the claim against the officer was "merely redundant and . . . of no independent legal significance").  The plaintiffs' claims against the individual officers in their official capacities are dismissed, with prejudice.

The plaintiffs have amended their complaint once as of right. They request leave to amend again to bring claims against the officers in their individual capacities.  *See Mitchell v. City of Sugar Land*, No. 10-223, 2011 WL 1156253, at *4 (S.D. Tex. Mar. 25, 2011) ("While a § 1983 claimant may not maintain an action against a state official in his official capacity, he may have a cause of action against a state official acting in his capacity as an individual.").  A district court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2).

The City argues that amendment would be futile because the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE § 101.106, would bar claims against the officers in their individual capacities.  (Docket Entry No. 14 at 12 n.1).  The City first cites § 101.106(e), which states:

> If a suit is filed under [this Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

TEX. CIV. PRAC. & REM. CODE § 101.106(e).

That provision does not apply at this point, because there are no claims against the individual officers and the City has not moved to dismiss any such claims under § 101.106(e). *See Ibarra v. Harris Cty. Tex.*, 243 F. App'x 830, 837 (5th Cir. 2007) (per curiam) ("Harris County has never filed a motion to dismiss its employees; therefore, the defendant officers have no automatic right to dismissal. Subsection (e) does not explicitly prohibit suits against both employee and governmental unit."). Even if § 101.106(e) did apply, it would not apply to the § 1983 claims. *See Tex. Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411, 416 (Tex. 2015) ("subsection 101.106(e) does not contemplate or require dismissal of section 1983 claims against individual government employees, or any other claim not brought under the Tort Claims Act"). At most, § 101.106(e) could make the plaintiffs' state-law tort claims against the defendant officers subject to a motion to dismiss, but not the § 1983 claims.

The City also relies on § 101.106(a), which states:

> The filing of a suit under [this Act] against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

TEX. CIV. PRAC. & REM. CODE § 101.106(a).

Section 101.106(a) applies to tort claims, including intentional tort claims. *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 463 (5th Cir. 2010) ("the election of remedies provisions in § 101.106 apply to state law intentional tort claims against a governmental unit and its employees"); *Pineda v. W. Texas Cmty. Supervision*, No. 19-CV-57, 2020 WL 466052, at *15 (W.D. Tex. Jan. 27, 2020) ("Plaintiff may not file any tort claim against the Officers now that he

has made the irrevocable election to sue the County." (citing § 101.106(a) and *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 659 (Tex. 2008))); *Sinegal v. City of El Paso*, 414 F. Supp. 3d 995, 1011 (W.D. Tex. 2019) (same).  But, as with § 101.106(e), § 101.106(a) does not apply to § 1983 claims.  *See Wright v. City of Garland, Tex.*, No. 3:10-CV-1852, 2014 WL 1492356, at *3 (N.D. Tex. Apr. 16, 2014) (§ 101.106(a) "does not apply to [the plaintiff's] § 1983 claim" (citing *Estate of Sorrells v. City of Dallas,* 2002 WL 1899592, at *4 (5th Cir. July 10, 2002) (per curiam))); *see also Edwards v. Oliver*, No. 3:17-CV-01208-M-BT, 2021 WL 881283, at *11 (N.D. Tex. Jan. 19, 2021), *report and recommendation adopted*, No. 3:17-CV-01208-M-BT, 2021 WL 873190 (N.D. Tex. Mar. 9, 2021) ("§ 1983 wrongful-death and survival claims are not subject to or barred by the Texas Tort Claims Act").

Sections 101.106(a) and (e) of the Texas Tort Claims Act make the plaintiffs' requested leave to amend futile in part, because state-law tort claims against the officers in their individual capacities would be barred.  Because those statutory provisions would not bar § 1983 claims against the defendant officers in their individual capacities, however, amending the complaint to assert those claims is not futile on that basis.  The plaintiffs' request for leave to amend is granted to the extent that they may amend to assert § 1983 claims against the officers in their individual capacities by **August 13, 2021**.

## B.    Capacity to Assert Claims on Behalf of the Estate

The City of Houston argues that Jennifer Thomson's claims on behalf of Chavez's estate must be dismissed because she has not pleaded sufficient facts showing that she has the capacity to assert claims on the estate's behalf.  (Docket Entry No. 14 at 10–11).

Texas law "authorizes survival actions by the estate's personal representatives and heirs at law." *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 212 (5th Cir. 2016) (citing TEX.

CIV. PRAC. & REM. CODE § 71.021(b)).  "Usually only a personal representative may bring a survival action, but heirs at law can maintain a survival suit . . . if they allege and prove that there is no administration pending and none [is] necessary."  *Id.* (quotation marks and brackets omitted)).  The complaint alleges that Thomson is an "applicant to be [a] dependent administratrix" of Chavez's estate.  (Docket Entry No. 12 at 4, 85).  The City of Houston argues that the allegations show that:  (1) estate administration is pending, which prevents heirs-at-law from asserting claims on the estate's behalf; and (2) Thomson has not been appointed as a dependent administratrix, so she cannot assert claims for the estate.  (Docket Entry No. 14 at 10–11).

The plaintiffs respond that, because there are four known and no unknown heirs-at-law, estate administration will be quick and uncontested.  (Docket Entry No. 15 at 4–7).  The plaintiffs argue that the purpose of requiring that no administration be pending to prevent disagreement among heirs is not an issue here.  (*Id.*).  But the plaintiffs do not identify authority allowing a court to circumvent the requirement that only personal representatives or heirs-at-law, if there is no administration pending, may bring survival claims.  Chavez's estate does not have a personal representative and there is an administration pending.  Thomson cannot assert survival claims on behalf of the estate at this time.

The plaintiffs state that Thomson is waiting for the probate court to finish the paperwork necessary for her to become the estate's personal representative, and they anticipate that the probate court will appoint Thomson as the estate's representative at its next hearing.  (Docket Entry No. 15 at 6).  Because amending the complaint would not be futile, the court dismisses Thomson's claims on behalf of Chavez's estate without prejudice.  The plaintiffs may file an amended complaint addressing Thomson's capacity to assert claims on behalf of the estate within 14 days after the probate court issues a ruling on the appointment of the estate's representative.

### C.      The Eighth Amendment Claim

The City of Houston argues that the plaintiffs' Eighth Amendment claims must be dismissed, because the Eighth Amendment's ban on cruel and unusual punishments applies only to criminal punishment.  (Docket Entry No. 14 at 12).  The plaintiffs did not respond, effectively abandoning their Eighth Amendment claims.  Even if the plaintiffs had responded, the claims would be dismissed because the Eighth Amendment does not apply outside the context of convicted offenders.  *See Carlton v. Fearneyhough*, No. 07-10676, 2008 WL 686595, at *2 (5th Cir. Mar. 12, 2008) (per curiam) ("the Eighth Amendment applies only to convicted prisoners"); *Garcia v. City of Mcallen, Texas*, No. 7:19-CV-00068, 2020 WL 1660095, at *5 (S.D. Tex. Apr. 1, 2020) ("[T]he protections of the Eighth Amendment against cruel and unusual punishment are limited in scope to convicted prisoners." (quotation marks omitted)).  The plaintiffs' Eighth Amendment claims are dismissed, with prejudice.

### D.      The Texas Tort Claims Act Claims

"Under Texas law, sovereign immunity exists to 'protect the State and its political subdivisions from lawsuits and liability for money damages.'" *El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d 918, 935 (W.D. Tex. 2008) (quoting *Garcia*, 253 S.W.3d at 655); *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019).  "Sovereign immunity" includes "governmental immunity," which "protects political subdivisions of the state, including municipalities." *El Paso Indep. Sch. Dist.*, 567 F. Supp. 2d at 935 (quotation marks and citations omitted); *Robison v. CNA Ins. Co.*, No. 1:17-CV-508, 2018 WL 10604116, at *6 (E.D. Tex. May 9, 2018) (governmental immunity protects "political subdivisions of the state, such as . . . cities." (quoting *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011))).  "Both

sovereign and governmental immunity deprive the Texas courts of subject matter jurisdiction." *El Paso Indep. Sch. Dist.*, 567 F. Supp. 2d at 935 (citation omitted).

Sovereign immunity has two parts: "immunity from liability and immunity from suit." *Id.* (citation omitted). "Immunity from suit bars suit against the entity altogether." *Id.* (citation omitted). As governmental units, municipalities are "immune from suit and tort liability unless the legislature has waived immunity." *Duffie v. Wichita Cty.*, 990 F. Supp. 2d 695, 717 (N.D. Tex. 2013) (citing *Harris County v. Dillard*, 883 S.W.3d 166, 168 (Tex. 1994)). Unless a constitutional or statutory provision waives a governmental unit's immunity, that unit may not be liable for the torts of its officers or agents. *Id.* (citing *Dallas County Mental Health and Mental Retardation v. Bossley* 968 S.W.2d 339, 341 (Tex. 1998)). "If the Legislature elects to waive immunity by statute, it must do so by clear and unambiguous language." *Chambers-Liberty Ctys.,* 575 S.W.3d at 344 (citing Tex. Gov't Code § 311.034). A plaintiff has the burden of "alleging a valid waiver of immunity" to show that the court has subject-matter jurisdiction over state-law claims brought against a governmental unit. *Robinson*, 2018 10604116, at *6 (quoting *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 927 (Tex. 2015)).

The plaintiffs assert state-law claims against the City of Houston for common-law assault, negligence, gross negligence, wrongful death under § 71.002 of the Texas Civil Practice and Remedies Code, and violations of the Texas Tort Claims Act. The City of Houston argues that those claims must be dismissed because the plaintiffs have not pleaded a valid waiver of its immunity. (Docket Entry No. 14 at 12–14). The plaintiffs did not respond to this argument, effectively abandoning these state-law claims.

Even if the plaintiffs had responded, the court would dismiss their state-law claims because immunity applies. The complaint identifies only § 101.021(2) of the Texas Tort Claims Act as the

basis for waiver.  That section states that a governmental unit may be liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."  Tex. Civ. Prac. & Rem. Code § 101.021(2); *see also Starrett v. City of Richardson, Tex.*, 766 F. App'x 108, 111 (5th Cir.) ("The [Texas Tort Claims] Act waives governmental immunity for personal injury 'so caused by a condition or use of tangible personal property or real property.'"), *cert. denied*, 140 S. Ct. 122 (2019).  The plaintiffs allege that § 101.021(2) applies because the individual officers used bean-bag guns and projectiles, tasers, firearms, and bullets to injure and kill Chavez. (Docket Entry No. 12 at ¶ 451).

The City argues that § 101.021(2) does not apply to the plaintiffs' claims, because the City did not "use" tangible personal property.  (Docket Entry No. 14 at 13).  A governmental unit "uses" personal property only if it "authorizes or orders an employee to use [the] tangible personal property for a specific purpose." *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 206 (Tex. 2020).  "[G]enerally approving [the] use" of the property is not enough.  *Id.* at 207–08; *see Harris County v. Annab*, 547 S.W.3d 609, 613 (Tex. 2018) (the allegation that a county "enabled, authorized, or approved [a constable's] use of the firearm does not amount to an allegation that the county used the firearm" and "does not trigger the Tort Claim Act's waiver of immunity").  Instead, the governmental unit must authorize or order the use of the property in the specific incident at issue.  *Id.*  For example, a county did not "use" a firearm when a constable used his county-issued firearm in a personal dispute while he was off duty.  *Annab*, 547 S.W.3d 609.  But when the Texas Department of Criminal Justice authorized a prison security officer to use riot-control devices "specifically in response to [an] incident," the Department "used" those devices and immunity did not apply.  *Rangel*, 595 S.W.3d at 208.

This case is closer to *Annab* than *Rangel*.  The individual officers were generally authorized to use their lethal and nonlethal duty weapons, but the plaintiffs have not alleged facts showing that the City of Houston specifically authorized or ordered the officers to use those weapons in response to the situation involving Chavez.  The bodycam footage, which the plaintiffs incorporated into their complaint, shows the individual officers using their weapons without specific orders to do so.  Section 101.021(2) does not apply.

The plaintiffs have not pleaded any other basis for finding that the court has jurisdiction over their state-law claims, and the City of Houston argues that the plaintiffs are unable to do so because of the Texas Tort Claim Act's intentional-tort bar.  The Texas Tort Claim Act "does not waive immunity for claims arising out of intentional torts," including assault.  *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014) (citing TEX. CIV. PRAC. & REM. CODE § 101.057(2)).  Wrongful-death claims based on a police officer's intentional shooting are intentional-tort claims subject to the intentional-tort bar.  *See, e.g.*, *Est. of Sizer by & through Sizer v. Cameron*, No. A-15-CA-01143-SS, 2017 WL 2418316, at *13 (W.D. Tex. June 1, 2017) (the Texas Tort Claims Act barred the plaintiffs' statutory wrongful-death claim because the "essence" of the claim was that a police officer used excessive force against the decedent and "such a claim sounds in intentional tort" (quotation marks omitted)); *Hatcher v. City of Grand Prairie*, No. 3:14-CV-432, 2014 WL 3893907, at *7 (N.D. Tex. Aug. 6, 2014).  The plaintiffs' wrongful-death claims based on the allegation that the officers "used excessive force and deliberately . . . shot and killed Nicolas Chavez" are barred by the Texas Tort Claims Act.  (Docket Entry No. 12 at ¶ 285).

The Act's intentional-tort bar also applies to negligence claims "based on 'the same conduct' as the intentional tort claim."  *Saenz v. City of El Paso*, 637 F. App'x 828, 831 (5th Cir. 2016) (citing *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001)).  The plaintiffs'

claims for negligence and gross negligence are based on the same conduct as their assault and wrongful death claims.  (*See* Docket Entry No. 12 at ¶¶ 291, 294 ("Alvarado used excessive force and deliberately . . . shot and killed Nicolas Chavez")).  The plaintiffs' allegations make clear that no "distinct facts" support their negligence and intentional-tort claims, placing the negligence claims "outside the TTCA's 'limited waiver of sovereign immunity.'"  *Saenz*, 637 F. App'x at 831 (quoting *Goodman v. Harris Cty.*, 571 F.3d 388, 394 (5th Cir. 2009)); *see Aguirre v. City of San Antonio*, 995 F.3d 395, 422 (5th Cir. 2021) ("intentional conduct, no matter how it is pled, falls under the TTCA's sovereign immunity waiver exception" (citing *Petta*, 44 S.W.3d at 580)).

The plaintiffs' state-law claims are dismissed, with prejudice, *see, e.g.*, *City of San Antonio v. Time Warner Cable, Texas LLC*, --- F. Supp. 3d ---, 2021 WL 1226570, at *19 (W.D. Tex. Mar. 31, 2021) (dismissing abandoned claims with prejudice); *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 708 n.2 (W.D. Tex. 2015) (same); *Ashbrook v. Ethicon Inc.*, --- F. Supp. 3d ---, 2021 WL 275562, at *3 (E.D. Ky. Jan. 25, 2021) (citing *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013), and without leave to amend, because no different factual allegations could overcome the TTCA's intentional-tort bar.

### E.    Municipal Liability Claims under 42 U.S.C. § 1983

A municipal entity may be held liable under 42 U.S.C. § 1983 if "an 'action pursuant to official municipal policy . . . caused a constitutional tort.'"  *Haddock v. Tarrant Cty., Tex.*, --- F. App'x ---, 2021 1991687, at *6 (5th Cir. May 18, 2021) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  A municipal entity may not be held liable under § 1983 based on *respondeat superior*; the entity cannot be liable simply because its employee harmed someone.  *Id.*

To assert a § 1983 claim against the City of Houston, the plaintiffs must allege three elements:  (1) a policymaker; (2) an official policy or custom; and (3) "a violation of constitutional

rights whose moving force is the policy or custom." *Id.* (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010)); *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (en banc).

The amended complaint originally asserted § 1983 claims against the City for "polic[ies] and procedures of": (1) "excessive force, deprivation of life and liberty without due process, cruel and unusual punishment, and interference with the parent-child relationship"; (2) "shooting and killing citizens holding nonfunctioning (botched) tasers; and (3) "failure to properly train" police officers. (Docket Entry No. 12 at 79–81). The court has dismissed the Eighth Amendment cruel and unusual punishment claims, with prejudice. In response to the motion to dismiss, the plaintiffs stated that they "have pleaded two counts against the City: (a) policies and procedures of excessive force, deprivation of life and liberty without due process, and cruel and unusual punishment; and (b) failure to properly train." (Docket Entry No. 15 at 8). The plaintiffs have effectively abandoned their § 1983 claim based on an alleged policy of "interference with the parent-child relationship," and that claim is dismissed.

The amended complaint asserts § 1983 claims against the City for excessive force and the deprivation of life and liberty without due process and for failing to properly train police officers. For each claim, the plaintiffs allege that the policies were promulgated by "the policymakers of the Houston Police Department, up to and including Chief Art Acevedo." (*Id.* at ¶¶ 437, 446). That satisfies the first *Monell* element. The City argues that the plaintiffs have not sufficiently pleaded the other elements of *Monell* liability. The court addresses the arguments for each claim in turn.

1.      **The § 1983 Claim for Excessive Force and Deprivation of Life and Liberty without Due Process**

The complaint incorporates several exhibits, including letters from Chief of Police Art Acevedo to the Police Officers' Civil Service Commission of the City of Houston indefinitely suspending officers Leblanc, Alvarado, Rubio, and Tapia.  (Docket Entry Nos. 12-2, 12-3, 12-4, 12-5).  The City argues that, because those letters show that the officers were indefinitely suspended for violating City policies on the use of deadly force, the letters undermine the plaintiffs' allegations that the City has a policy of allowing excessive force or depriving life and liberty without due process.  The City also argues that, because the letters show that the policy the plaintiffs alleged does not exist, they cannot allege that such a policy was the primary force behind Chavez's injuries and death.

Official municipal policies include "written policy statements, ordinances, . . . regulations," *Brown v. City of Houston*, 297 F. Supp. 3d 748, 765 (S.D. Tex. 2017), "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law," *Taylor v. Hartley*, 488 F. Supp. 3d 517, 541 (S.D. Tex. 2020) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  "A policy is only official when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy." *Id.* at 765–66 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

The plaintiffs allege that the City's policies allowing police officers to use excessive force and deprive individuals of life and liberty without due process "is clear from the reactions of the other police officers that were present" when Chavez was killed.  (Docket Entry No. 12 at ¶ 437).  The plaintiffs allege that the failure to intervene to stop officers Alvarado, LeBlanc, Nguyen, Tapia, and Rubio from "assaulting" Chavez demonstrates the existence of this unwritten policy,

custom, or practice. (*Id.*). The plaintiffs allege that the policy is a practice "so pervasive as to have the force of law," built on the City's "proclivity to 'turning a blind eye' . . . to gross violations of clearly established constitutional rights." (*Id.*).

To plead plausible allegations of a practice or custom so persistent and widespread as to have the force of law, the plaintiffs "must do more than describe the incident that gave rise to [the] injury." *Ratliff v. Aransas Cty., Tex.*, 948 F.3d 281, 285 (5th Cir.) (quotation marks omitted), *cert. denied*, 141 S. Ct. 376 (2020). The complaint's allegations of the practice or custom "must contain specific facts." *Taylor*, 488 F. Supp. 3d at 541 (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018)).

The amended complaint alleges facts relating to the shooting, the indefinite suspension of the officers involved in the shooting, and two other incidents involving the use of deadly force by Houston police officers. The amended complaint alleges that several of the suspended officers testified during the City's internal investigation that they believed they were following City policy when they shot Chavez. The plaintiffs argue that this shows the existence of a policy sufficient to avoid dismissal under Rule 12(b)(6).

Although the court must accept as true the allegations that several officers told the City's Internal Affairs investigators that they believed their actions followed City policy, that does not protect the § 1983 claim from dismissal. The amended complaint does not tie the officers' alleged beliefs to a City custom or practice of allowing excessive force. The plaintiffs have alleged several policies, abandoning one such claim. That the officers who shot Chavez have stated they believed that they were following an unspecified City policy raises the question of whether their belief was objectively reasonable, but it does not support an inference that the City had a policy allowing police officers to use excessive force or to deprive individuals of life without due process of law.

Nor does the complaint's inclusion of two other incidents involving deadly shootings by Houston police officers sufficiently allege a widespread custom or practice of excessive force or deprivation of life and liberty without due process. The amended complaint conclusorily alleges that "incidents involving Houston Police Department officers shooting and killing unarmed mentally ill people are commonplace." (Docket Entry No. 12 at ¶ 252). But the amended complaint identifies only two other incidents, involving different facts, that occurred in 2012 and 2020. Although a "pattern of similar incidents" may support an inference of a widespread practice that has the force of law as a policy, *Peña*, 879 F.3d at 622 n.14, these two incidents are insufficient.

"In order to find a municipality liable for a policy based on a pattern, that pattern must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (quotation marks omitted). "Showing a pervasive pattern is a heavy burden." *Sanchez v. Young Cty., Texas*, 956 F.3d 785, 793 (5th Cir.), *cert. denied*, 141 S. Ct. 901 (2020). "A pattern requires similarity, specificity, and sufficiently numerous prior incidents," based on the context of the incident and the City's police force. *Davidson*, 848 F.3d at 396–97. Alleging two dissimilar incidents, over an eight-year period, involving deadly police force in the fourth-largest city in the United States, is insufficient to plead a practice so persistent and widespread as to have the force of law as a municipal policy. *See, e.g.*, *Carnaby v. City of Houston*, 636 F.3d 183, 189–90 (5th Cir. 2011) (no pattern: two reports of violations of a policy in four years in Houston); *Peterson*, 588 F.3d at 851 & n.4 (no pattern: 27 complaints of excessive force over four years in Fort Worth); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (no pattern: 11 incidents of warrantless searches in Houston). The plaintiffs have not sufficiently alleged facts that support

a plausible inference that the City has a policy allowing police officers to use excessive force or deprive individuals of life and liberty without due process.

The complaint is also insufficient as to the final *Monell* factor, which requires factual allegations supporting a causal connection between the alleged policy and the injury. The complaint is deficient in two ways. The first is that it fails to adequately plead a municipal policy; a nonexistent policy cannot cause an injury. The second is that the complaint alleges causation by conclusion, stating that the alleged policies of excessive police force and deprivations of life and liberty without due process were "the producing and proximate causes of Nicolas Chavez's death, and thereby Plaintiffs' injuries." (Docket Entry No. 12 at ¶ 438). The plaintiffs appear to allege that the officers were following the policy when they shot Chavez. But, as discussed above, the complaint does not tie the officers' actions, or their individual beliefs that they were acting appropriately, to a specific policy. Even if the complaint sufficiently alleged a policy of excessive force and deprivation without due process, it does not adequately tie that policy to Chavez's injury. The complaint does not sufficiently allege facts supporting the § 1983 claim based on an alleged policy of allowing police to use excessive force and deprive individuals of life and liberty without due process.

The plaintiffs have amended their complaint once as of right. (Docket Entry No. 12). They have not sought leave to amend their § 1983 claims. (*See* Docket Entry No. 15 at ¶ 58 (seeking leave only to sue the individual officers in their individual capacities)). A district court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend further does not appear at this stage to cause undue delay, result from bad faith, represent the repeated failure to cure previous amendments, create undue prejudice, or be futile. *Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020) (citing *Smith v. EMC Corp*, 393 F.3d 590, 595 (5th

Cir. 2004)).  The plaintiffs may seek leave to amend their complaint as to their § 1983 claim by **August 13, 2021.**

### 2. The § 1983 Claim for Failing to Properly Train Police Officers

To assert a failure-to-train claim under § 1983, the plaintiffs must allege facts that, if proven true, show three elements: "(1) that the municipality's training procedures were inadequate"; "(2) that the municipality was deliberately indifferent in adopting its training policy"; "and (3) that the inadequate training policy directly caused the violations in question." *Ratliff*, 948 F.3d at 285 (quoting *Zarnow*, 614 F.3d at 170).  "Municipal liability doesn't attach merely because 'a particular officer may be unsatisfactorily trained' or 'an otherwise sound program has occasionally been negligently administered.'" *Taylor*, 488 F. Supp. 3d at 535 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989)).  And proof that the plaintiffs' injury "could have been prevented if the officer had received better or additional training cannot, without more, support liability." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)

The complaint alleges that the City has a policy of failing to adequately train its police officers on the use and lawful limits of force, including deadly force.  (Docket Entry No. 12 at ¶ 445).  The complaint also alleges that this alleged failure-to-train "shows a conscious indifference to the [constitutional] rights . . . [of] the citizens and people of Harris County, Nicolas Chavez and Plaintiffs in particular"; "is so reckless that misconduct by [City] officers was inevitable"; "was a producing and proximate cause of Nicolas Chavez's death, and thus Plaintiff's injuries"; "and is so pervasive as to have the force of law."  (*Id.* at ¶ 446).

The City argues that the plaintiffs fail to specifically allege how its training program is inadequate or how any inadequacy caused Chavez's death.  To survive a motion to dismiss, the plaintiffs "must allege with specificity how the training program is defective" as to "the tasks the

24

particular officer[s] must perform." *Taylor*, 448 F. Supp. 3d at 535 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998), and *Roberts*, 397 F.3d at 293).   The amended complaint does allege that the City failed to adequately train its police officers in various areas, but the complaint "neither alleges specific facts about the training protocols in [the City of Houston] nor describes any deficiencies in the program in light of [the identified police officers'] assigned duties."  *Id.* (citing *Snyder*, 142 F.3d at 798).   Because the plaintiffs have not "identified a specific training program or shown how it is inadequate," they cannot satisfy the first or third elements needed to plead a failure-to-train claim under § 1983.  *See Ratliff*, 948 F.3d at 285 (the allegation that "'a deficiency in training actually caused [the defendants] to violate [the plaintiff's] constitutional rights' . . . does not state a claim for relief and warrants dismissal under Rule 12(b)(6)").

The City also argues that the plaintiffs fail to sufficiently plead the second element, that the City was deliberately indifferent in adopting its allegedly inadequate training policy.   The plaintiffs respond by arguing that the phrase "deliberate indifference," or an approximation, was used throughout the complaint.  (Docket Entry No. 15 at 19 (citing Docket Entry No. 12 at ¶¶ 285, 288, 291, 294, 320, 323, 326, 329, 355, 358, 361, 364, 390, 393, 396, 399, 425, 431, 434)).   That is insufficient for two reasons.  First, those allegations are conclusory.  Second, those allegations relate to the officers' conduct in shooting Chavez, not the City's conduct in training its police officers.

"'Deliberate indifference' is a 'stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'"  *Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 751 (S.D. Tex. 2011) (quoting *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000)).   Generally, a plaintiff must "demonstrate a pattern of conduct" consisting of "at least a

pattern of similar incidents in which the citizens were injured." *Id.* (quoting *Snyder*, 142 F.3d at 798). As discussed above, the plaintiffs have not alleged a pattern of similar incidents.

The plaintiffs argue that the single-incident exception to deliberate indifference applies, so that they need not allege a pattern of similar incidents for their failure-to-train claim. The Fifth Circuit has instructed that "a showing of deliberate indifference is difficult, although not impossible, to base on a single incident." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). "[T]o rely on the exception a plaintiff must prove that a highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Id.*

The plaintiffs argue that their allegation that several of the officers who shot Chavez told the City's investigators that they believed they acted according to their training supports applying the single-incident exception. The plaintiffs argue that Chavez's death was a highly predictable consequence of the City's failure to train the officers on the appropriate use of force. "The single-incident exception is generally reserved for those egregious cases in which the state actor was provided no training whatsoever." *Anokwuru v. City of Houston*, 990 F.3d 956, 966 (5th Cir. 2021) (citing *Peña*, 879 F.3d at 624). The plaintiffs allege that the City did train the officers, and the attachments to their complaint discuss the officers' use-of-force training. (*See, e.g.*, Docket Entry No. 12-2 at 5–6). The complaint does not sufficiently allege facts supporting the § 1983 claim based on an alleged failure to train.

The plaintiffs may amend their complaint as to their § 1983 claims, including based on the failure to train, by **August 13, 2021.**

26

IV.     **Conclusion**

The City of Houston's motion to dismiss, (Docket Entry No. 14), is granted.  The claims against the Houston Police Department and the police officers in their official capacities are dismissed, with prejudice, because amendment would be futile.  The claims on behalf of Chavez's estate are dismissed, without prejudice and with leave to amend within 14 days of the probate court's issuance of its ruling on the appointment of an estate representative or administrator.  The § 1983 claims based on the City's alleged policies of excessive force, deprivation of life and liberty without due process, and failure to train, are dismissed, without prejudice and with leave to amend by **August 13, 2021**.  The plaintiffs may also amend their complaint to assert § 1983 claims against the defendant police officers in their individual capacities by **August 13, 2021**.  All the other claims are dismissed, with prejudice, again because further amendment would be futile.

SIGNED on July 22, 2021, at Houston, Texas.

_____
                        Lee H. Rosenthal
                  Chief United States District Judge